Thank you, Professor Hashimoto. I know you were court appointed. Thank you for accepting the appointment as always. You did a great job. Thank you. Pedro versus Transunion. Let's wait for the courtroom to clear before you start. Okay, Mr. Selvin. Thank you, Your Honor. Good morning. May it please the Court, Jonathan Selvin, on behalf of Plaintiff Appellant Pedro. I apologize in advance. I have a bit of a summer cold, so hopefully the coughing will hold off. I'm happy for the distance. I'm sure. Your Honor, the central issue before the Court today is under what possible reading of FCRA is it okay to report someone else's debt as yours in a way that causes your credit score to drop? And we submit that there is no possible reading of FCRA under which that would be permissible. Now, what tells us that? The plain language of the statute tells us that. There's nothing ambiguous about it. FCRA says that they have to provide maximum possible accuracy about the person to whom the report relates. That's 15 U.S.C. 1681 E.B. I think there are two relevant clauses there, maximum possible accuracy and the person about whom the report relates. Now, Ms. Pedro was an authorized user on her parents' account, which meant that she had the ability to use their credit card to assist them, but she was never, and this is undisputed, never financially or legally obligated for any of their debts. So the question, I'm sorry, go ahead, Your Honor. But if the credit reporting agency can, in a matter of objective reasonableness, conclude that the statute allows them to report this accurate information, right? That's, I mean, to establish willfulness on the part of the agency in violating the statute, you're going to have to show they adopted an unreasonable, objectively unreasonable interpretation of the statute. And what they reported is accurate, is it not? Well, there are two answers to that, Your Honor. The first is it depends on what the meaning of accurate is under the statute. Now, every circuit to address the issue… She was an authorized user, right? She was an authorized user. And there was a problem with the account. There was a problem with her parents' account. We don't know how they… But she was an authorized user. On which she was an authorized user, but never legally… That's accurate, right? It is, if the standard is technical accuracy, I might agree with Your Honor. Now, the standard for willfulness is going to be objectively unreasonable. And what I'm having a hard time understanding is how it could be objectively unreasonable for them to report accurate information. Because you have to determine what it means for information to be accurate. If the statute merely required technical accuracy, it is literally true that she was an authorized user on her parents' account. It is not literally true that she was in any way obligated legally, financially, otherwise for their debts. Something about the way they reported this, and we don't know how they reported it because we've gotten no discovery. All we have, and this is in the record, is what she got from them that shows a delinquent account with Capital One on her parents' credit card. We don't know how it was reported to anybody else. We've never gotten any discovery. But getting to what I, and I don't want to speak for Judge Pryor, but what I think Judge Pryor is trying to get to, because I have the same question, is even assuming that the definition of maximum possible accuracy is that it has to be misleading in some way, and that's all, and not technical accuracy. In this case, why, in view of the fact that there is this dispute between technical accuracy and whether it's misleading, why was it objectively unreasonable for the defendants in this case to have construed the statute the way they did, regardless of whether they were right or wrong about it ultimately? And I think there's two answers to that. The first is we've alleged that they've knowingly violated the statute, not just that they were reckless. But how could they knowingly violate a statute that we haven't construed yet and that has been interpreted in more than one way? Well, it hasn't been interpreted in more than one way with respect to this test. Every circuit, every circuit has held that it's maximum, that maximum possible accuracy means not materially misleading. Well, that's true currently, you know, at this moment. But there has been, I think that's three circuits we're talking about. And there's been case law earlier from, I think, the Third Circuit, which I think is not good anymore, but still saying that it was technical accuracy. So that's my concern. Right. Well, so a couple of things. So how could it be objectively unreasonable under those circumstances? So if you walk through the circuit analysis on this, you have the D.C. Circuit, Coropolis v. Credit Bureau, the Fourth Circuit, Dalton v. Capital Association Industries, the Fifth Circuit in Sepulveda, the Third Circuit in two cases, both Cortez and the Siemens case, and then interpreting the similar language in a different part of the statute, but the same issue. And this is under 1681S2B1C. You have the Ninth Circuit, the Sixth Circuit, and Baggio. They cite an old unpublished Sixth Circuit case, but there's a more recent Sixth Circuit case called Baggio v. USAA. You have the Third Circuit, the Tenth Circuit, and the Fourth Circuit. So there is no circuit that has held the technical accuracy as the test. There are a handful of district court cases and a lone unpublished non-precedential Sixth Circuit case. But that's the problem, right? I mean, if there are a number of courts, regardless of whether they're district courts, circuit courts, or whatever, and there is the earlier decision by the Third Circuit that did hold that it was technical accuracy. I agree that that's been abrogated at this point. But even so, if there are all of these courts that have concluded that this is a reasonable construction, how can we say that the defendants knowingly violated the statute when there's no binding case law in this circuit? So the question is whether we've plausibly alleged that they've knowingly violated the statute. And we did plausibly allege that they knowingly violated the statute. They designed the entire system in a way that allows someone else's debts, not your debt, right? The statute says maximum possible accuracy about the person to whom the report relates. It's a nice kind of attempt to avoid the question, but, I mean, it seems to me. So have you plausibly alleged, though, that it was objectively unreasonable? We have alleged that, Your Honor. We have alleged that and we've argued. When the interpretation they adopt is in conformity with at least some case law and where our circuit has not adopted any standard, how can you say you have plausibly alleged that that was objectively unreasonable? Well, I think we've plausibly alleged that there's a knowing violation because they designed the system. And knowing means that it has to be objectively unreasonable. See, that's why I say you're trying to dodge what the real issue is. I don't think I am, Your Honor, because I think you have to look at it. But you agree with me, do you not, that the standard for knowingly is that it has to be objectively unreasonable? I actually think that's the standard for the recklessness. If you look at safe code, that's the standard for the recklessness. But how could you knowingly do it? I mean, how could you knowingly violate a statute that it's not – there's not clarity about what it means? Well, but I guess I'm trying to understand if the question is what have court of appeals said about this? What have binding opinions from courts of appeals said? I agree. By the time we brought this case, the Third Circuit had reversed itself, right? If there were binding authority in this circuit, I am completely with you. The problem is there's nothing of the sort at the time – not even up until now is there anything of the sort in this circuit.  This circuit has not weighed in. But, of course, TransUnion functions nationwide, and this system applies nationwide. But you're not suing in a circuit where that's the law. I understand that. But the test for binding authoritative guidance – first of all, again, it only comes into play if the statute is ambiguous. And we don't think the statute is ambiguous. We think the statute is clear on its face that you have to provide accurate information about the person. This isn't accurate information about the decision. Do you think that the knowing requirement is somehow an easier requirement to meet than the reckless requirement? I don't think it is an easier requirement. I think it's a different requirement. I think there's two different ways to satisfy the statute. Now, we generally think of reckless as a lower standard. But the point of the Supreme Court's analysis was if you don't have a clear statute and if you don't allege knowledge, there's still another way to get at this, which is recklessness. And so that's what they were establishing in the Safeco case. Now, I would say that in order to prove whether or not this was a reasonable interpretation, there's a whole host of things we don't know because we've never gotten discovery. So I would submit that if you think the statute is ambiguous, then we fall into Levine land. And I know several of you are familiar with the Levine case. And we are procedurally – I think it's the only time Judge Pryor didn't reverse me when I was in it. We are procedurally in the posture of Levine I, not Levine II. We've gotten no discovery. And in Levine I, this Court said you're at least entitled to go down and find out what did they do, how did they do it, why did they do it. We've gotten none of that. Now, they may win on summary judgment, but I submit that we're entitled to at least get that discovered. Thank you, Mr. Selvin. Mr. Newman. Thank you, and may it please the Court. I'd like to begin by following up on some comments from Judge Rosenbaum. One of the most critical aspects of the Safeco decision from the Supreme Court is the concept that there must be clear legal authority that clearly put the defendant on notice that its conduct violated. And the appellant's claim here is a bold one. Appellant is arguing that a particular kind of reporting that is both frequent and that is actually encouraged by regulators as a way to help consumers, younger consumers, build credit, that somehow this is a violation, not just a violation of the statute, not a negligent violation of the statute that caused damage in some way, that this is a willful violation of the statute when this statute has not been construed in this circuit against the defendant. And turning briefly to is this Levine I or Levine II, first of all, Levine I was pre-Safeco. And here you have a great deal, even more than there was on the table in Levine, in terms of guidance that would have put an agency, would have led an agency to believe that reporting through authorized user information is completely acceptable. The only district court case on the subject is Bailey, goes back to 2013. It says categorically that this kind of reporting is permissible. Let me ask you a question. The other part of this case that I think is very interesting and important is what the standard actually is for maximum possible accuracy. Why shouldn't it be that if there's something that's misleading that reasonably could have been addressed by the reporting agency that that would not satisfy the definition without respect to whether it was unreasonable or reasonable interpretation, just in a vacuum? In a vacuum, the reason why the technical accuracy standard is the better one, and I'm not suggesting that the court even needs to decide that today because I submit that we win under either standard, which is what the court found in Bailey. But as a defendant, notice and ability to plan for compliance are essential. And to have a standard of, well, could this have been misleading to somebody? In many, many kinds of cases, that is only knowable through the rearview mirror. After the fact, it is very, very easy. But there are plenty of cases where you all know that. I mean, in this case, it was brought to your attention and nothing was done. It wasn't brought to our attention because the Regulation B says that authorized user reporting is mandatory for spousal accounts and permissible for non-spousal accounts. So, yes, plaintiff alleges that people have complained about this. Yes, but what I'm saying is the fact that it's misleading in certain circumstances has been brought to your attention. Nothing has been done. And then I think the question becomes, is it a reasonable, you know, is it reasonable the accommodation, if you will, of the agency, the reporting agency, to make it so that it's not misleading, that reporting, by simply adding another statement that says this is not the responsible party on the account or something of that nature. But that's already there, Your Honor. I mean, if Your Honor will look at the Consumer Data Industry Association's brief, they actually provide with their brief what the different codes stand for. Actually, I've reviewed the amicus briefs in this case. But even so, I mean, it's not entirely clear. But who is misled? I think you need to think about who is misled. These are reports that are used by lenders. If a lender knows what it means to be an authorized user and knows how to report that, and then they get a report and they see what an authorized user is, and they see that it's someone who is authorized to use the account who is not contractually liable, in this circumstance, it's not even likely to mislead. Now, I don't want to fight Your Honor's – I'm not trying to fight Your Honor's question about which is the better standard. Yes, there may be circumstances, not this case, where the agency knows that something could be misleading. And, you know, perhaps those are the kinds of cases that lead courts to adopt. Well, in this circumstance, yeah, it's – Why would you win under either standard here? Well, as I just mentioned, Your Honor, these reports are used by lenders who receive the consumer data industry guidance, who are told very specifically that an authorized user account, that an authorized user is not contractually obliged on the account. And so they know precisely what this is. In the Senate report that was attached to this complaint. Yes. In the column that said responsibility status, it just said account relationship terminated. It didn't say she was really only an authorized user. Well, I apologize, I didn't mean to. Well, no, but I mean, you're saying that users of these reports understand what it means to be an authorized user, but if the report doesn't say it, that's a problem, isn't it? What the complaint alleges is that – because we don't have all the versions of the report attached, but we do have some descriptions in the complaint. Well, there is one attached. There is one, and the complaint explains that the report first stated authorized user. The plaintiff then complained to Capital One. The credit card issuer did not complain to the Bureau. The consumer complained to Capital One. Capital One then changed the status from authorized user to account relationship. I know. I'm familiar with the history of it. But this is why – Your Honor asked a question about why that was attached to the complaint. No, I don't ask why it was attached to the complaint. My question is, you know, it does not disclose that she was an authorized user, right? The complaint is not about the status. I'm not talking about the complaint. I'm talking about the report that's attached to the complaint. Yes. And it does not identify her as an authorized user, right? That's what the report attached to the complaint says, correct. Okay. And so when you talk about – when your argument is based on people who read these reports understand what it means to be an authorized user, but it's not in the report, that kind of undermines your argument, doesn't it? Well, the plaintiff does not allege that it was a violation to report through account status terminated. If the complaint alleges that the wrongful act and the complaint for – the claim that is attempted to be certified, the allegedly wrongful act is the reporting of the authorized user status. Other than just for the history of, oh, and then I complained to the credit card company and then the credit card company changed it to account status terminated, and then I complained again and then they took it off entirely, that's the only thing that's there. There's no charging allegation in the complaint as to the account status terminated in here. It was an attempt by the credit card company to respond to plaintiff's complaint. And it was an attempt to fix things. And at this point, the Bureau was not involved at all and for all – Your point is, and she never alleges that that change in response to her complaint was a violation of the statute. Precisely, Your Honor. I think it's also important to point out that, you know, technical accuracy or misleading, there is no dispute here that the historical facts that were reported were true and that she was an authorized user of the account. She actually used the account and that the account later became delinquent. The argument is that the opinions that people might form about these facts are somehow unfair. She's a good person. She was trying to help her parents, and it is not fair to view her as less creditworthy. But the study that she cites in her complaint, the Avery study, that study finds that authorized user information is predictive. So whether or not in her circumstance, you know, she thought she was doing the right thing by helping her parents, the study she cites in her complaint shows that having authorized user information tells something about the ability to predict future behavior. And by the way, this is why Regulation B initially was enacted to encourage this kind of reporting because, you know, years ago, women, they would get divorced or they would be widowed and they'd have to establish credit for themselves, and they would have no credit history because the credit card accounts would be open in the name of the husband. And there's a recognition by the agency that, wait a second, someone who's an authorized user on an account may be very much involved in the financial life of the account. They may be involved in making budgeting decisions. They may be involved in making payment decisions. And so it is a useful way to learn about a person's credit history. And that is also why the Consumer Financial Protection Bureau gives specific advice to people, how do I help my children establish credit? Well, one way you can do that is if you can open a credit card account in your name, make the child the authorized user, give that person the card, make them responsible for looking at the bills, making sure it gets paid. Often that kind of reporting actually benefits the consumer because the consumer, the report reflects a good credit history from accounts where they were an authorized user to the extent that we were to rule that that's a bad thing to do, we're discouraging that kind of reporting. Absolutely, Your Honor. Well, I don't think it's really about whether it's a good thing or a bad thing to do. I think the question is whether the information that's on the credit report is misleading in any way. So it's not about making a judgment call about whether or not, you know, she's a good credit risk or a bad credit risk. It's just about making sure that the information that appears on the credit report is not misleading in a way that the agency reasonably could have avoided it having been misleading. That's what maximum possible accuracy means as far as I understand it. And that's why I'm asking, and why I originally asked, why shouldn't that be the standard? Let me answer your question in two parts, so please bear with me. The plaintiff does not allege that she was actually denied credit because someone was misled by this. So there's nothing in the complaint that shows a misleading theory of the case. Now, in terms of which is the better standard to adopt, as an agency, we have to have rules that we can apply. And, you know, when you have something that is so deeply embedded in the financial system, you have a regulation, you have informal guidance, you have case law, and to subject this to, well, maybe someone could be misled, it really throws a monkey wrench into the whole operation, and it exposes the company to risk that it just can't cope with. What do you do in those other circuits, then, where that is the law? I mean, you haven't gone out of business. You're not offering credit reports in those circuits, I assume. Well, we're hopefully not out of business, but we certainly have greater litigation risk in those circuits, Your Honor. But what SAFCO requires is precision, and I submit that the misleading standard does not supply the agency with sufficient precision to plan its business. I see my time has almost expired, unless the Court has any further questions. My only point about what the actual commercial practice is, is that we've got to be careful even if we were to adopt the standard that others have about it being misleading, we've got to be careful about what the ramifications of that might be, right? Exactly, Your Honor. And I think what SAFCO does require is you look at the specific conduct. Has this conduct been specifically proscribed? And in this case, this specific conduct has not been specifically proscribed. So there can be no willfulness liability as a matter of law. Thank you, Your Honor. Can I? Sure. I just want to follow up. You mentioned SAFCO a couple of times. I may have misunderstood Mr. Sullivan's argument, and he can correct me in a minute if I've got it wrong. But if I understand, he's saying, you know, this statute is not unclear. And so, I mean, it's clear as a bell, couldn't be more clear, maximum possible accuracy. So we don't even get to surveying what other circuits are doing. Do you agree with that or disagree with that? Well, maximum possible accuracy does not have a lot of guideposts around it. Possible? I mean, well, anything is possible. It makes me think of it. And the fact that we're even having a discussion about accuracy. Okay. So, I mean, just you don't think that's clear, but assuming it were clear, do you agree with his analysis that if there's no ambiguity in the statute, then you don't even start doing this survey of what the reporting agency. Well, I think the evaluation of ambiguity, like what's done in qualified immunity cases, which the Supreme Court has said, you know, it's a similar analysis. You know, the standard is, you know, don't use excessive force. Well. No, but you're not answering my question. I mean, do you just stop at step one if there's an unambiguous statute? Then you don't do a survey of how courts have interpreted it. You have to look at the statute and how it has been construed in light of the specific conduct across jurisdictions. What may be, you know, for example, in the mixed file case. You know, for example, you know, I attach, you know, a judgment against Judge Rosenbaum. Please don't. Positive or negative to your Honor's file. Yeah, it sounds negative. Yeah, it's a, you know, this is a borderline. This is not a mixed file case. This is not a I always paid on time and you told me I never paid on time. You know, there is this question. The alleged violation is that they reported that she was an authorized user. Yes, that the account had been delinquent. Right. I've gone way over my time and I thank the court for its indulgence. Mr. Yes, Judge Martin, I want to pick up with where you left off on the issue of how clear the statute is. It is difficult to imagine how Congress could have been more clear than maximum possible accuracy. And every circuit court to look at it has so held. And with respect, Judge Rosenbaum, I don't believe the Third Circuit previously held and then abrogated. I believe that's the Sixth Circuit that did that with an unpublished opinion and a later one. So every circuit. But let me but let me say about this court not having ruled on it. That's the Hinkle case. In the Hinkle case, the court says this is a case of first impression in this court. Every other circuit has held X, Y and Z. We're going to hold because the statute is clear. We're going to join every other circuit in holding as they held it. So I would say that there's clearly not a requirement that this circuit hold it. If that's the case, these poor reporting agencies, there's only three of them, are going to have different standards in every single jurisdiction. They don't. They have one standard that applies nationwide. I want to talk about this other authoritative guidance that they mentioned because it's not authoritative and it's not authority. So the first thing is this regulation that applies to spouses. And my friend talks about the importance of encouraging this goes back to women not having their own credit cards. Our case has nothing to do with spouses. We specifically exclude spouses. We're not complaining about reporting about spouses and with good reason. Spouses are typically jointly liable for each other's financial debts whether they're on them or not. Just refer to spouses. I referred to children as well. I'm coming to that as well, and that's a very different circumstance. My son is on my account as an authorized user. I'm financially liable for his debts. So it's fine. If he gets in trouble, it ought to be reported on mine, right? So the whole point of that fact page, and by the way, that's what it is. It's an Ask Me page from the Consumer Financial Protection Bureau. And, again, if they're going to start having their nationwide policies controlled by an Ask Me page on the Consumer Financial Protection Bureau, if that's going to determine what their statutory obligations are, I think they need to be careful what they ask for. That Ask Me page is exactly the kind of guidance that this Court has held in Levine, that the Supreme Court held in Safeco. These one-off random citations don't control what the statute means, especially when the statute's clear. And so here's the problem with technical accuracy. The problem with technical accuracy, the Cortez Court, the Third Circuit, cited an old Fifth Circuit case on this. If they report accurately that I was involved in a credit card scam, period, full stop, that may be true even if I was the victim of a credit card scam. Now, it's technically accurate. I was involved in a credit card scam, but it's materially misleading, right? Instead of worrying about that, let's say that the other standard is the right standard. Okay. The materially misleading. What should they have reported that they did? What they should have reported, well, the most important thing is that we don't know that they did. Would it have been a violation to report that your client was an authorized user? Period, full stop, no. No, no, no. We're going to assume that there are other things. Okay. Would that be one thing that could be reported? That would be one thing that they could report that I don't think would be misleading. And that the account had been delinquent? I think that begins to become misleading because it's not her responsibility. Begins to become misleading. Is there something else that they should have alleged that would have made it not misleading by reporting that? Well, that's a great question, Your Honor, and we don't know how they reported it. There's a reason we attached what we attached to the complaint and not the original report. It's not something that's provided to the consumer. All she has is what we attached. They have, he says they don't know, but actually they have, and we would get in discovery, what did they say about him that caused their own system to give her a credit drop? Remember, it's not some third party who gave her a credit hit. They gave her a credit hit. Her credit score as they reported it fell because of whatever they said about her authorized user status. We don't know what they said. That's not in the record. So we want to find out. What did they say? What could they have said that might have conformed to the statute? That's exactly why I think this is Levine 1 and not Levine 2. We ought to have the opportunity to see what they did and how they did it in order to establish whether they were reasonable in interpreting the statute the way they did. We don't believe they were reasonable, and we don't believe that an old fact page from the CFPB and a regulation about spouses who aren't even at issue in this case should come into play here. So I'd just like to end where I began, which is I don't see how any reasonable reading of the statute, FCRA, which is designed to protect consumers, could allow them to report someone else's debts as yours, whether it's a stranger or your parents, in a way that affects your credit score. Thank you, Your Honor. Negatively affects. That's your real argument. They can only report it as long as it helps you. Again, you're getting back to the minor children, which is not the same issue, because the parent remains liable for that child's debts. It's a different issue. Thank you. Respect, Your Honor. Thank you. We're in recess until tomorrow. All rise. Recess adjourned.